IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAREY NICHOLSON )
)
v. ) C.A. _____
)
MILLCREEK TOWNSHIP DEPARTMENT )

## COMPLAINT

AND NOW, comes the plaintiff, by and through her attorney, Richard T. Ruth, and brings the following Complaint:

## I. THE PARTIES

1. Carey Nicholson, the plaintiff, is an adult female individual who resides in Erie County, Pennsylvania.

2. Millcreek Township Police Department, the defendant, is a department of Millcreek Township, Erie County, Pennsylvania, with its headquarters located at 3608 West 26th Street, Erie, PA 16506

## II. VENUE

3. The venue of this action is the Erie District of the Western District of Pennsylvania pursuant to the general venue statute which is 28 U.S.C. § 1391(a).

## III. JURISDICTION

1

4. Jurisdiction of this action is conferred by 28 U.S.C. § 1331, the federal question jurisdictional statute, for Counts I and II, and by 28 U.S.C. §1367(a) for Count III.

## IV. PREDICATE FACTS

5. Carey Nicholson was hired by the Millcreek Police Department [herein "MPD"] as a Patrolman on January 5, 2010 and today remains a Patrolman.

6. In August, 2015, she joined the MPD SWAT Team as a Crisis Negotiator and was, by past practice, to become Team Leader in 2024, but Carter Mook, Chief of the MPD, replaced her as Team Leader with a less experienced male on February 9, 2024, for reasons unstated.

7. Throughout her career, Carey Nicholson has attended patrol and crisis related classes and was scheduled to attend a Sexual Assault training course with another female officer during the week of April 22, 2024, when Chief Mook decided, for reasons unstated, that she and the other female officer would not be going to that Sexual Assault training course and two male officers would go in their stead.

8. Throughout her career, Carey Nicholson has taken, on her own time, online courses in investigation, which have resulted in multiple certifications being placed in her personnel file.

9. Throughout her career at MPD, Carey Nicholson has never been disciplined, suspended, or involved in any internal investigation.

10. In 2021 and 2022, Carey Nicholson sought promotion to the ISD Detective level.

11. She was twice interviewed as part of her seeking promotion to the ISD Detective level.

12. Prior to each interview, she authorized review of her personnel file by her interviewers.

13. Both of her interviews went well though even though the questions asked were not focused on the duties and responsibilities of the ISD Detective position.

14. Five individuals were appointed to the Detective position as a result of the interview process, three in late 2021; one at the end of November, 2022; and one at the end of December, 2022.

15. All those promoted has less seniority than her.

16. Four of the five promoted were males; the female who was promoted to a dedicated Detective position in drug investigations as that female had been working with the PA AG's Office for the previous six years doing drug investigations while she worked as a MPD Patrolman.

17. At the end of November, 2022, Carey Nicholson asked Captain Donald Kucenski, the officer who had directed the interviews and promotion process for Detectives in 2021 and 2022, the reason she had not been promoted.

18. In response, Captain Kucenski stated, "You do good work, but you just didn't stand out."

19. "Not standing out" is an opaque response as no job related questions were asked during the interview process and no job qualifications had been listed or announced for the ISD Detective position promotion.

20. With a few exceptions, MPD has historically not employed police officers other than white males.

21. On April 14, 2011, an extensive study of MPD's recruitment and interview practices was done for the MPD by an outside consultant in response to public perception of the MPD's demographic imbalance.

22. That study was entitled, "Millcreek Police Department Recruitment Study" and relevant pages from that study are appended hereto as "MPDRS page/s ____".

23. MPD's informal questioning of interviewees, as here, was cited as an inhibitor of selections outside MPD's traditional white male demographic group. MPDRS pages 93-95; 133-136, appended hereto as **Exhibit A**.

24. MPD's failure to use updated job descriptions of the position being sought resulting from a job analysis, as here, was also cited as a contributing factor. MPDRS page 134. See **Exhibit A**.

25. On April 21, 2023, plaintiff filed Complaints with both the Pennsylvania Human Relations Commission and the Equal Opportunity Commission over her failure to be promoted to ISD Detective in 2021 and 2022.

26. One year has elapsed since the filing of plaintiff's PHRC Complaint and the PHRC issued a letter on April 29, 2024 so acknowledging, a copy of which is appended as **Exhibit B**.

27. Plaintiff obtained a Right to Sue letter from the United States Department of Justice, Civil Rights Division, on September 26, 2024, a copy of which is appended as **Exhibit C**.

## V. LEGAL COUNTS

### A. FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM

28. Paragraphs 1-27 are incorporated by reference herein as fully stated.

29. The actions of the MPD, as above set forth, were customs, practices, and policies under color of state law.

30. The customs, practices, and policies set forth above were intended to deprive, and did deprive, plaintiff of her right to be promoted to Detective without consideration of her gender, female, and were thus intentional violations of her

right as a female citizen of the United States under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to engage in public employment without being subject to sexual discrimination, and thereby actionable under 42 U.S.C. §§ 1983 and 1985.

31. As a result of defendant's violation of this law, plaintiff has lost a deserved promotion; suffered a loss of a pay and benefit increase; and suffered emotional distress.

**WHEREFORE**, plaintiff is entitled to and requests:

A. Retroactive promotion to ISD Detective effective not later than December, 2022;

B. Back pay, front pay, back benefits, and front benefits lost as a result of her non-promotion from not later than December, 2022;

C. Attorney fees, expert witness fees, and costs;

D. Prejudgment interest;

E. Compensatory damages including emotional distress damages;

F. Post-verdict income tax adjustment award to account for inability to income average under the Internal Revenue Code; and

G. Such further remedies as will make her whole.

**JURY TRIAL DEMANDED**

## B. TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 CLAIM FOR GENDER DISCRIMINATION

32. Paragraphs 1-27 above are incorporated herein by reference as if the same were here fully stated.

33. At all times material hereto, plaintiff was an "employee" of the defendant within the meaning of that definition set forth in the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

34. At all times material hereto, defendant was an "employer" of plaintiff within the meaning of that definition set forth in the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

35. The acts of defendant, as set forth above, constituted "unlawful discriminatory practices" under 42 U.S.C. § 2000e against plaintiff because of her sex, female.

36. As a result of the violations set forth above, plaintiff has suffered the following damages: She has lost a deserved promotion; suffered a loss of pay and benefit increase; and suffered emotional distress.

**WHEREFORE**, plaintiff prays this Court advance this case on the docket; order a speedy trial at the earliest practical date; and upon such trial:

    A. Enter a declaratory judgment that the acts complained of herein are unlawful and violative of Title VII;

B. Permanently enjoin defendant, its agents, employees, and those acting in concert with defendant, from engaging in each of the unlawful acts, practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law, so that defendant no longer discriminates on the basis of sex;

C. Immediately assign plaintiff the rank of Detective retroactively to December of 2022;

D. Compensate plaintiff for all earnings and other benefits which she would have received but for the discriminatory acts of defendant;

E. Award pre-judgment interest on any amounts awarded;

F. Award plaintiff compensatory damages;

G. Award plaintiff emotional distress damages;

H. Award plaintiff's reasonable attorney fees; expert witness fees; and costs; and

I. Award such other relief as may be just and proper, including income tax adjustment.

**JURY TRIAL DEMANDED**

### C. PHRC SEXUAL DISCRIMINATION CLAIM

37. Paragraphs 1-27 above are incorporated herein by reference as if here fully stated.

38.  Based on the above averments, defendant violated Section 5(a) of the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

39.  As a result of the above violations, plaintiff has suffered the following damages: She has lost a deserved promotion; suffered a loss of pay and benefit increase; and suffered emotional damages.

40.  Plaintiff is entitled to remedies under § 9 of the Pennsylvania Human Relations Act.

**WHEREFORE**, plaintiff demands all remedies appropriate under § 9 of the PHRA.

**JURY TRIAL UNDER THE SEVENTH AMENDMENT OF THE UNITED STATES CONSTIUTION DEMANDED FOR PHRA CLAIM**

Respectfully submitted,

Richard T. Ruth, Esq.
Richard T. Ruth, Attorney at Law
1026 West 26th Street
Erie, PA   16508
(814)453-6606 phone
(814)453-5047 fax
rt@rtruth.net
Pa. Supreme Court # 23459

9